## Richmond.

## SEEFRIED AND OTHERS v. CLARKE AND OTHERS.

### March 14, 1912.

1. PARTITION—*Suits Under Section 2562 of Code—Extent of Jurisdiction—Multifariousness.*—In the enactment of section 2562 of the Code (1904) in its present form the legislature intended to broaden and extend the jurisdiction of the courts in partition suits, and in the exercise of that jurisdiction the courts may set aside a deed to one of the parties of a part of the land to be divided, either because the grantor had no power to make the deed, or because of his mental incapacity. The fact that both grounds for setting aside the deed are alleged in the bill for partition does not render the bill multifarious. Such a bill attains the desired end in a way convenient to all concerned, and does no serious injury to any one of them.

2. WILLS—*Construction — Precatory Trusts — Enforcement.*—In the construction of wills the object is to ascertain the meaning of the testator. A will is but the legal declaration of a person's mind, his intent, his wish, his will, as to the disposition of his property after his death. That will may be expressed in terms of command, of recommendation, of entreaty, of request; and if, from the language used, the court can ascertain the will of the testator—if the suggestion, or the recommendation, or the wish, be certain, and if the beneficiaries of the wish be also certain—the court will give effect to it. The wish of a testator, no matter how expressed, if expressed clearly, should be regarded as a command.

3. WILLS—*Construction—Case in Judgment—Precatory Trusts.*—A testatrix appointed her husband her executor, and, by the second clause of her will, devised and bequeathed to him, "his heirs, administrators, or assigns, all of my estate, real and personal, with one simple request, that the said estate be divided with my children, or its equivalents, as his better judgment may direct." The husband conveyed the greater portion of the real estate to one of the daughters of the testatrix, and nothing to the other children. After his death this deed was assailed by one of the daughters, upon the ground, amongst others, that her mother's will created a trust for the equal benefit of all her children, and that the deed made by her father was a violation of that trust, and was therefore null and void.

*Held:* The word "simple" in the clause above quoted means *direct, clear;*

and the terms "as his better judgment may direct" did not confer upon the husband an arbitrary discretion with respect to the division of the testatrix's estate; that a trust was created by her will, for the equal benefit of all her children, and hence the deed from the husband to the daughter was null and void.

Appeal from a decree of the Circuit Court of Henrico county. Decree for the complainant.    Defendants appeal.

*Affirmed.*

The opinion states the case.

*John A. Lamb* and *John B. Minor,* for the appellants.

*John B. Gayle, Conway R. Sands,* and *McGuire, Riely & Bryan,* for the appellees.

KEITH, P., delivered the opinion of the court.

Mary Carter, of the county of Henrico, left a will by which she appointed her husband, Thomas J. Carter, her executor, and by the second clause bequeathed to him, "his heirs, administrators, or assigns, all of my estate, real and personal, with one simple request, that the said estate be divided with my children, or its equivalents, as his better judgment may direct."

This will was admitted to record, and Thomas J. Carter took possession under it of the entire estate.   On the 15th day of April, 1907, he made a deed by which he conveyed to Florence Seefried, one of his daughters, a portion of the real estate which had been devised to him by the will of his wife, and after his death his daughter, Mrs. Clarke, filed her bill, in which she made all of the other children of Thomas J. Carter, including Florence Seefried, parties defendant, averring that the deed from her father to Florence Seefried was executed at a time when the grantor's mind had become greatly impaired; that he was subject to hallucinations, and that he was totally incapable of making a valid deed or contract of any kind.   The bill prays a partition of the real estate of which he died seized, in kind, if such partition may be had, and, if it cannot be done with due regard to the rights of all parties, that it may be sold and the proceeds divided

among the parties entitled thereto. There was an amended bill in order to introduce an additional party, and for the purpose of setting forth, as an additional ground of relief, that under the terms of the will of Mary J. Carter a trust in said tract of land was created for the benefit of the plaintiff and her sisters; that the execution of the trust was imposed, by the terms of the will, on Thomas J. Carter, who had no right, power, or authority to dispose of the same in any manner other than that specified in the will—namely, by its division between the children of Mary J. Carter; and that, for these reasons, the deed of April 15, 1907, from Thomas J. Carter to Florence C. Seefried, was a violation of the trust created by the will, and, therefore, null and void; and that, since Carter not only neglected and refused to perform the trust imposed upon him by said will, but committed an express breach of the same, the complainant and her sisters are entitled to have the trust enforced for their benefit by a court of equity, and the land divided among all the children of Mary J. Carter, the testatrix.

There was a second amended bill, the only object of which was to introduce an additional party.

These bills were demurred to upon several grounds—viz., '(1) because the court was without jurisdiction to hear the case; (2) because the interpretation placed by the bill upon the will of Mrs. Carter, the mother of Florence Seefried, is not correct; (3) because the plaintiff attempts, by bill in chancery, to try the title to real estate; and (4) because, if the plaintiff has any remedy, it is by an action of ejectment.

The plaintiff and the defendants all deduce their title from the will of Mary J. Carter. The object of the bill is the partition of certain real estate among those entitled. To the accomplishment of this object it was necessary to remove the deed by which Thomas J. Carter had conveyed the greater portion of the real estate in controversy to his daughter, Florence Seefried. To accomplish this object the bill states two propositions, either one of which, if well founded, is fatal to that deed and to the rights of those claiming under it. The first proposition is that the deed is invalid because the grantor was mentally incapable of executing such a deed; and, secondly, that by force of the trust created by the will of Mary J. Carter, her husband and devisee, Thomas J. Carter, had no power to execute such a deed.

It will be observed that the object of the bill is one over which a court of equity has undoubted jurisdiction; that its sole purpose, its sole object, is to secure a partition of real estate among the parties in interest. This right, if the bill be true, may be established, and this point may be reached, by one of two routes, either of which accomplishes the result, and if the allegations of the bill are true (and upon demurrer they are taken to be true), the deed which is the subject of attack is of no effect for both reasons.

Section 2562 of the Code declares that tenants in common, joint tenants, and co-parceners shall be compellable to make partition; and in the last clause it is provided that "any court having general equity jurisdiction of the county or corporation wherein the estate, or any part thereof, is, shall have jurisdiction in cases of partition, and in the exercise of such jurisdiction may take cognizance of all questions of law affecting the legal title that may arise in any proceedings, as well between tenants in common, joint tenants, and co-parceners as others." *Davis* v. *Tebbs*, 81 Va. 600; *Fry* v. *Payne*, 82 Va. 759, 1 S. E. 197; *Bradley* v. *Zehmer*, 82 Va. 685; *Pillow* v. *S. W. Va. Imp. Co.*, 92 Va. 144, 23 S. E. 22, 53 Am. St. Rep. 804; *Laurel Creek Coal & Coke Co.* v. *Browning*, 99 Va. 535, 39 S. E. 156; *Moon* v. *Highland, &c. Co.*, 104 Va. 551, 52 S. E. 209; *Hagan* v. *Taylor*, 110 Va. 9, 65 S. E. 487.

With respect to this statute it may be said that the legislature has manifested a purpose to broaden and extend the jurisdiction of courts in partition suits, and that, whenever a question has arisen in a partition suit which the statute was held to be not broad enough to embrace, the legislature has promptly met the situation by an amendment, the latest of which is that of 1903. As the act stood before that date, and as it is found in the Acts of 1897-8, at p. 488, the language of the last clause was that a court of equity "shall have jurisdiction in cases of partition, and in the exercise of such jurisdiction may take cognizance of all questions of law affecting the legal title that may arise in any proceedings"; but it having been suggested that this only conferred jurisdiction to pass upon questions arising between tenants in common, joint tenants, and co-parceners, the act of 1903 was passed (Acts 1902-3-4, p. 836), which adds, immediately after "proceedings," in the conclusion of the statute, the words "as well

between tenants in common, joint tenants, and co-parceners as others."

We shall not undertake either an inclusive or an exclusive demarcation of the lines of jurisdiction under this very broad grant of power. We have no doubt that it is sufficient to comprehend the case before us.

The cases upon the subject of multifariousness in bills are very numerous. We shall refer to only a few of them.

In *Snyder* v. *Grandstaff*, 96 Va. 473, 31 S. E. 647, 70 Am. St. Rep. 863, it is said: "A bill is not rendered multifarious by presenting alternative views, or different aspects of the same facts. There must be distinct collocations of distinct and different facts, each presenting different rights, and calling for different relief, to render a bill multifarious."

In *Hill* v. *Hill*, 79 Va. 592, it is said that "a bill is usually deemed multifarious for containing different causes of suit against same persons, when these two things concur—to-wit, the different causes must be wholly distinct, and each cause must be sufficient, as stated, to sustain a bill." Citing *Huff* v. *Thrash*, 75 Va. 550. "But there is no general rule applicable to all cases. *Segar* v. *Parish*, 20 Gratt. (61 Va.) 679. And where the causes, though distinct, are not absolutely independent of each other, and it will be more convenient to dispose of them in one suit, the objection for multifariousness will not prevail."

If the plaintiff in this suit, for instance, had filed a bill asking for partition, making the proper parties, and alleging her right to partition upon the ground that the deed from her father to Florence Seefried was void, because the will under which he took the devise had created a trust in favor of all his children, and had filed another bill asking partition of the identical property among the same beneficiaries, and attacking the same deed, because the grantor was mentally incompetent to make a deed, the court, had the matter been called to its attention, would not have allowed the defendants to be harassed and subjected to costs in two suits between the same parties and having the same object in view, but would have required them to be heard together, for convenience and economy in the administration of justice.

In *School Board* v. *Farish,* 92 Va. 160, 23 S. E. 222, it is said that

courts, in dealing with the question of multifariousness, "look particularly to convenience in the administration of justice; and, if this is accomplished by the mode of proceeding adopted, the objection of multifariousness will not lie, unless the course pursued is so injurious to one party as to make it inequitable to accomplish the general convenience at his expense. So that, when we look to see if a bill is multifarious, the first question to be determined is, does the bill propose to reach the end aimed at in a convenient way for all concerned? And, if the mode adopted does accomplish the end of convenience, then the question arises, is any one hurt by it, or so injured as to make it unjust for the suit to be maintained in that form?"

In *Spooner* v. *Hilbish*, 92 Va. 333, 23 S. E. 751, the same principle is announced. See *Campbell* v. *Mackey*, 1 My. & Cr. 603; *Nulton* v. *Isaacs,* 30 Gratt. (71 Va.) 726; *Almond* v. *Wilson,* 75 Va. 623.

We think the demurrer to the bill was properly overruled.

Does the will of Mary J. Carter create a trust for the benefit of all of her children? The clause to be construed reads as follows: "I will and bequeath to my said husband, his heirs, executors, administrators, or assigns, all of my estate, real and personal, with one simple request, that the said estate be divided with my children, or its equivalents, as his better judgment may direct."

In the construction of wills the object is to ascertain the meaning of the testator. A will is but the legal declaration of a person's mind, his intent, his wish, his will, as to the disposition of his property after his death. That will may be expressed in terms of command, of recommendation, of entreaty, of request; and if, from the language used, the court can ascertain the will of the testator—if the suggestion, or the recommendation, or the wish, be certain, and if the beneficiaries of the wish be also certain— the court will give effect to it.

In this case the testatrix makes what she terms a "simple request, that the said estate be divided with my children, or its equivalents, as his better judgment may direct." There is no question here about who are the beneficiaries; there is no question as to what estate the language used operates upon. The word "request" is fit and suitable to express the will of the testatrix,

and its force is not diminished, but is rather emphasized, by the use of the word "simple." It means *direct, clear* (Webster). It is as though she had said, "I make this direct request."

Nor do we think that by the use of the terms, "as his better judgment may direct," the testatrix meant to clothe her husband with an arbitrary discretion with respect to the division of her estate. If, in the execution of the duty imposed upon him, he had divided the property unequally, the question might well have been raised as to the measure and extent of the discretion reposed in him; but that case is not before us.

The doctrine of precatory trusts is recognized in our decisions, though the subject has not been very frequently considered.

In *Harrison* v. *Harrison*, 2 Gratt. (43 Va.) 1, the testator said: "In the utmost confidence in my beloved wife, I leave to her all my worldly goods, to sell or keep for distribution amongst our dear children, as she may think proper. My whole estate, real and personal, are left in fee simple to her, only requesting her to make an equal distribution amongst our heirs; and desiring her to do for some of my faithful servants whatever she may think will most conduce to their welfare, without regard to the interest of my heirs." It was held that the widow was invested, subject to the payment of testator's debts, with the legal title to the whole estate, real and personal; that she took the beneficial interest in the estate for life; that the children of the marriage took a vested remainder in fee in the estate, to commence in possession at the widow's death, or earlier at her election; and that precatory words in a will are sufficient to create a trust, where the subject and the object are certain. *Roneys* v. *Roneys*, 7 Leigh (34 Va.) 13.

Bispham's Principles of Equity, treating of this subject, at page 85 says: "From the decisions upon this subject, and from the principles upon which the general law of trusts is based, certain rules may be derived by which the construction of instruments containing precatory expressions is to be governed. The question in all cases is whether a trust was or was not intended to be created, or, in other words, whether the testator designed to leave the application or non-application of the subject-matter of the bequest to the designated object entirely to the discretion of the donee, or whether his meaning was that his language

should be deemed imperative, and that such discretion should. be excluded. This is usually considered, by the best authorities, to depend upon three things—*first*, upon the general terms of the will; *secondly*, upon the certainty of the subject-matter; and, *thirdly*, upon certainty of the object."

In the case before us no light is to be derived from the consideration of the context. Without doubt the first clause of the will vests a fee simple estate in the devisee, but that fact is a very general concomitant of precatory trusts. As we have already seen, the subject matter and the objects of the trust are beyond cavil and dispute.

Continuing, the same author says: "Precatory expressions ought, *prima facie*, to be considered as imperative, and to exclude discretion; the wish of a testator, no matter how expressed, if expressed clearly, should be regarded as a command. This is the opinion of Lord Redesdale in *Carry* v. *Carry*, 2 Scho. & Lef. 189, and although the dicta in some subsequent cases would seem to be in favor of giving a less decided effect to words of recommendation or request, yet it is conceived that the above statement of the rule is justified by the best considered decisions both in England and in this country. It is seldom, indeed, that expressions of this nature are found standing alone, and not strengthened, or qualified, or controlled by the context; but when they *do* stand alone they ought to be considered as imposing an obligation, and not merely as constituting a request, which the person to whom it is addressed is at liberty to disregard. The reason is obvious. A will, in its very nature, is the disposition which the testator desires to have made of his estate after his death. All expressions in it indicative of his wish or will are commands." 3 Pom. Eq. Jur. (3d Ed.), 1905.

The subject of precatory trusts was fully considered by the Supreme Court of the United States in *Colton* v. *Colton*, 127 U. S. 300, 32 L. Ed. 138. A great number of cases of English courts and of State courts were cited by counsel and considered by the court. The testator, by will, gave to his wife all of his estate, real and personal, and then added: "I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best."

No one can read that will and the will under consideration without being impressed with the strong likeness between them. There is the gift of the entire estate to his wife, whom he recommends and requests to make such gift and provision for his mother and sister as in her judgment will be best. The language is certainly not more imperative than in the will of Mrs. Carter, and the concluding language of the clauses in each will is equally strong to sustain the argument in favor of an unrestricted discretion. Mr. Justice Matthews, speaking for the court, said: "The entire estate bequeathed to his widow is affected by this request. Is that request equivalent to a command, or is it a mere solicitation, which after his death she may reject and disregard without violating the terms of his will and the conditions upon which she accepted her estate under it? * * * Undoubtedly he gives to her some discretion on the subject; the gift and provision which he request for his mother and sister is to be such as in her judgment will be best. It is to be such as will be best for them, having regard to all the circumstances, both of their necessities and the amount and sufficiency of the estate; and this proportion, which is to constitute what shall be best, is to be determined by the widow in the exercise of her judgment. It is her judgment that is to be called into exercise, and this excludes caprice, whim, and every merely arbitrary award; but whatever the judgment may be, and whatever discretion is involved in its exercise, it operates only upon the nature, form, character, and amount of the gift and provision intended for them. The fact of a gift and provision is presupposed, and stands on its own ground. Her judgment is not invoked as to that. The only ambiguity, in respect to whether there shall be a gift and provision or not, resides in the single word 'request.' Does that mean a wish of the testator which he intended to be fulfilled out of the means which he had furnished to make it effectual, or does it mean a posthumous petition which the testator understood himself as addressing to the favor and good will of his sole legatee?" Discussing this phase of the subject, the court goes on to say: "It is an error to suppose that the word 'request' necessarily imports an option to refuse, and excludes the idea of obedience as a corresponding duty. If a testator requests his executor to pay a given sum to

a particular person, the legacy would be complete and recoverable. According to its context and manifest use, an expression of desire or wish will often be equivalent to a positive direction, where that is the evident purpose and meaning of the testator; as where a testator desired that all of his just debts, and those of a firm for which he was not liable, should be paid as soon as convenient after his decease, it was construed to operate as a legacy in favor of the creditors of the latter. *Burt* v. *Herron*, 66 Penn. St. 400. And in such a case as the present it would be but natural for the testator to suppose that a request, which, in its terms, implied no alternative, addressed to his widow and principal legatee, would be understood and obeyed as strictly as though it were couched in the language of direction and command. In such a case, according to the phrase of Lord Loughborough in *Malim* v. *Keighley*, 2 Ves. Jr. 333, 529, 'the mode is only civility.' "

The court then considers the objection that the trust sought to be established by the will in that case was incapable of being executed by reason of uncertainty as to the form and extent of the provision intended, and because it involved the exercise of discretionary power on the part of the trustee, which a court of equity has no rightful authority to control; and quotes with approval from Lewin on Trusts (4th Eng. Ed.), sections 2, 402, 403, where it is said that "it is quite true that where the manner of executing a trust is left to the discretion of trustees, and they are willing to act, and there is no *mala fides*, the court will not ordinarily control their discretion as to the way in which they exercise the power; so that if a fund be applicable to the maintenance of children at the discretion of trustees, the court will not take upon itself, in the first instance, to regulate the maintenance, but will leave it to the trustees. But the court will interfere wherever the exercise of the discretion by the trustees is infected with fraud or misbehavior, or they decline to undertake the duty of exercising the discretion, or generally where the discretion is mischievously and erroneously exercised, as if a trustee be authorized to lay out money upon government, or real, or personal security, and the trust fund is outstanding upon any hazardous security."

In *Costabadie* v. *Costabadie*, 6 Hare, 410, Vice-Chancellor Wi-

gram, on this subject, said: "If the gift be subject to the discretion of another person, so long as that person exercises a sound and honest discretion, I am not aware of any principle or any authority upon which the court should deprive the party of that discretionary power. Where a proper and honest discretion is exercised, the legatee takes all that the testator gave or intended that he should have—that is, so much as, in the honest and reasonable exercise of that discretion, he is entitled to. That is the measure of the legacy."

"But it is always for the court eventually to say, when called upon, whether the discretion has been either exercised at all, or exercised honestly and in good faith." *Colton* v. *Colton, supra.*

Summing up the whole discussion on the point, the Supreme Court, in *Colton* v. *Colton, supra,* concludes: "If the trustee refuses altogether to exercise the discretion with which he is invested, the trust must not on that account be defeated, unless by its terms it is made dependent upon the will of the trustee himself."

In this case the trustee died, not only without executing the trust, but after committing a breach of the trust by conveying the greater part of the trust estate to one of the beneficiaries, and leaving the others almost wholly unprovided for.

We shall not enter into a discussion of what the testatrix meant by saying that the estate was to be divided "with" her children, and how far that expression differs from a trust to be divided by the trustee "among" his children. The husband is dead, intestate. If he had divided the estate *with* his children and died intestate, his share would have been divisible among all his children. If, as we have before said, he had undertaken to execute the trust by an unequal division among his children, a somewhat different case would have been presented, but upon the facts of the case in judgment we are of opinion that a trust was created by the will of Mary J. Carter for the equal benefit of all her children, and as the decree of the circuit court appealed from reaches that conclusion, we are of opinion that it should be affirmed.

*Affirmed.*