## Staunton.

## AMANDA J. BARE'S EXECUTORS v. GRACE ELLEN MONTGOMERY.

### November 12, 1925.

1. WILLS—*Construction—Intention of Testator.*—The rule is elementary that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and when ascertained effect will be given to it unless it violates some rule of law, or is contrary to public policy. In ascertaining this intention the language used and the sense in which it is used by the testator is the primary source of information, as it is the expressed intention of the testator which is sought.

2. WILLS—*Creation of Trust Estate—Direction by Testator that his Wife Should Provide for a Dependent—Case at Bar.*—In the instant case complainant, an orphan without means of support, was taken into the family of testator at the age of thirteen and remained in the family for twenty-seven years. Complainant was required during this time to do all kinds of work, both indoors and out of doors, and was provided by the testator with her board and clothes. In his will testator directed that at the death of his wife "I require her to make necessary provisions for to pay" complainant "well for faithfulness in my home as she has been in my home since childhood." Testator's widow at her death bequeathed complainant $1,500.

   *Held:* That this language of testator impressed a trust in favor of complainant upon his estate, and that the sum of $1,500 bequeathed to complainant by the widow did not "pay her well" for the work done.

3. TRUSTS AND TRUSTEES—*Creation of Trust—Language Employed.*—In order to create a trust estate, either by deed or will, it is not necessary to employ technical language. It is not necessary to use the words "upon trust" or "trustee" if the creation of a trust is otherwise sufficiently evidenced. If it appeared to be the intention of the deceased from the whole instrument creating it, that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, imposing corresponding duties upon the party receiving the title if it be capable of lawful enforcement.

Appeal from a decree of the Circuit Court of Rockbridge county.   Decree for complainant.   Defendants appeal.

*Affirmed.*

The opinion states the case.

*Greenlea D. Letcher*, for the appellants.

*Hugh A. White*, for the appellee.

Campbell, J., delivered the opinion of the court.

In the year 1886, the appellee, Grace Ellen Montgomery, *nee* Hamilton, was left an orphan at the age of thirteen years.   Without means of support and on the charity of the world, she was taken into the home of George and Amanda Bare, a childless couple in the county of Rockbridge, as a member of their family, but not as a daughter in the legal acceptation of the word.

Mr. and Mrs. Bare were people of frugal habits and accustomed to the work incidental to farm life.   For a period of twenty-seven years the appellee, without educational advantages, remained in the Bare family. According to the report of the commissioner filed in this cause, "she was required to do and did all kinds of work, both indoors and out of doors."   While the evidence shows that the appellee had wholesome food furnished her, and was provided with clothes in keeping with her condition in life, she was afforded very few of the pleasures young girls are accustomed to indulge in.

At the time the appellee went to live with the Bares she was told by George Bare:   "Now, we have no children and if you are a good girl and do what is right we are going to do a big part by you."

On the 20th of December, 1911, George Bare died testate.   His will is as follows:

"I, George Bare, of Ledington, R. F. D. No. 2, rockbridge county, Virginia, bearing in mind the uncertainty of human life, and being of sound and disposing mind and memory, do make and declare this my last will and testament, hereby revoking and annulling all other wills heretofore made by me.

"First, I direct my just debts to be paid.

"Second, I give, bequeath and direct, that my beloved wife, Amanda J. Bare, shall have all my real estate and personal estate of every description wheresoever situated.

"Third, At the death of my wife, Amanda J. Bare, I require her to make necessary provisions for to pay Grace Ellen Hamilton well for faithfulness in my home as she has been in my home since childhood.

"Fourth, I appoint my beloved wife, Amanda J. Bare, executrix of this my last will and testament and ask the court to allow her to qualify without security.

"In testimony whereof, I have hereunto set my hand and affixed my seal to this my last will and testament on this the 20th day of December, 1911.

"GEORGE BARE   (SEAL)"

In the year 1912 appellee married J. R. Montgomery. In 1913, Mrs. Bare sold the farm devised to her by husband, appellee joining in the deed to the purchaser, for the purpose of relinquishing any claim she might have in the property, but not for the purpose of relinquishing her rights under the will of George Bare.

After the marriage of appellee, Mrs. Bare resided a portion of the time with nieces, the other portion of the time residing with appellee.

In 1921, Amanda J. Bare departed this life, testate,

leaving an estate valued at $9,550. Her will, among other things, contains the following clause:

"I bequeath to Grace Ellen Montgomery (formerly Grace Ellen Hamilton) the sum of fifteen hundred ($1,500.00) dollars to be paid to her in money, and should my personal estate be insufficient to pay this legacy my real estate shall be charged with the payment thereof."

Appellee refused to accept the sum of $1,500 bequeathed to her, and at the November, 1922, term of the circuit court filed a notice of motion for judgment against J. P. Montgomery and Robert Thompson, executors of the last will and testament of Amanda J. Bare, alleging that the estate of testatrix was indebted to her in the sum of $8,000, for services rendered George and Amanda J. Bare during a period of twenty-seven years, which indebtedness was evidenced by the provisions of the will of George Bare.

There was a demurrer to the notice which was sustained, but the court, instead of dismissing the action at law, transferred the same to the equity side of the court, with direction to appellee to proceed in that forum. Appellee accordingly filed her bill of complaint and there was an answer filed thereto; the cause was referred to a master commissioner, who, after hearing numerous witnesses, filed a report fixing the compensation to which appellee was entitled at $3,500. All exceptions to the report being overruled, the court decreed in favor of appellee. It is this decree which is the subject of this appeal.

The pivotal question in the cause is, did the testator, George Bare, impress his estate with a trust in favor of the appellee, and, if so, was the amount so decreed a full discharge of the trust?

The rule for the interpretation of wills has been frequently stated by this court.

[1] In *Conrad* v. *Conrad's Ex'r*, 123 Va. 716, 97 S. E. 338, Judge Burks said: "The rule is elementary that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy. In ascertaining this intention, the language used, and the sense in which it is used by the testator, is the primary source of information, as it is the expressed intention of the testator which is sought."

[2, 3] That the appellee performed unusual services for the Bares is not controverted by the appellants. That she possessed certain rights under the will of George Bare was conceded by Mrs. Bare, who procured her joinder in the deed of conveyance to George Rader, upon the condition that appellee would be dealt with fairly and honestly. The answer to the question propounded must be in the affirmative.

The language employed by the testator, "at the death of my wife, Amanda J. Bare, I require her to make necessary provisions for to *pay* Grace Ellen Hamilton well for faithfulness in my home, as she has been in my home since childhood," is definite and commanding. The use of the word "require" by the testator was in no sense a request, but an *order* to pay appellee "well" for the services rendered by her for over a quarter of a century.

A great deal of discussion has been indulged in, in regard to the questions of contract and wages. We do not think either the question of contract or the question of wages is involved in this litigation. As stated, the only questions involved are those of trust and compensation.

In order to create a trust it is not necessary to employ technical language. This rule is made plain in

*Colton* v. *Colton*, 127 U. S. 310, 8 S. Ct. 1168, 32 L. Ed. 138. The facts in this case were as follows: "The testator was a wealthy man and had dependent upon him a mother and sister; the mother was in feeble health and required constant care and was practically without means of support, and they had been cared for by the testator. The will of the testator provided as follows:

" 'I give and bequeath to my said wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized and possessed or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best.'

"The widow having failed to make suitable provision for the mother and sister, each filed a bill in equity against her, setting up that the provision in their favor in the will was a trust."

The court held that the language employed charged the estate with a trust in favor of the complainants. In passing upon this question the court said: "No technical language, however, is necessary to the creation of a trust either by deed or by will. It is not necessary to use the words 'upon trust' or 'trustee' if the creation of a trust is otherwise sufficiently evidenced. If it appeared to be the intention of the deceased, from the whole instrument creating it, that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, imposing corresponding duties upon the party receiving the title if it be capable of lawful enforcement."

The only discretion given by the will of George Bare to his widow was to see that appellee was well paid for the services rendered. This discretion Amanda J.

Bare failed to exercise in the manner directed by her husband. That the sum of $1,500 bequeathed to appellee did not "pay her well" for the work done, is made plain by the mathematical demonstration that during her long service appellee, in addition to board and clothes, was only entitled to the sum of $4.63 per month. As so aptly said by the learned chancellor in his notes filed in this cause: "This shocks the conscience of the court."

Construing the will of George Bare from the viewpoint of his intention as to the provision to be made for appellee out of his estate, we are of the opinion that there is no error in the holding of the trial court, and its decree will be, in all respects, affirmed.

*Affirmed.*