# Richmond

MINNIE G. WHITEHEAD, ETC. V. D. J. WHITEHEAD, ET ALS.

January 8, 1940.

Record No. 2130.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

*E. C. Hurt, Jr., Joseph Whitehead, Jr.*, and *Carter & Williams*, for the appellant.

*N. E. Clement* and *Crews & Clement*, for the appellees.

BROWNING, J., delivered the opinion of the court.

This case involves the construction of the will of the late R. D. Whitehead, which was probated on August 24, 1938. It is this:

"Since the Death of my Brother J. J. Whitehead I think I shall write a will like I want it. Two Day's after the Burial of Cousin J. Hunt Hargrave

At Home Glenview Farm Chatham, Va.      April 6th, 1935

I, R. D. Whitehead being of Sound Mind and Disposing Memory do make this My last Will and Testament hearby revoking all previous Wills Made by Me.   First of all all of my Just and Honest Debts be paid if there be any by my Wife Minnie G. Whitehead   The Balance of my Estate I give to My Wife Minnie G. Whitehead Both real and Personal also Cash, Bond Stocks and Insurance in fee simple. I hearby Nominate and Appoint My Said Wife Minnie G. Whitehead as Administratrix of this My last Will and request the Court not to require any security or Appraisement for her as Such   I request Minnie G. Whitehead My Wife to give My Sister Nannie D. Whitehead $150.00 a year as long as She lives and has the Money to give her. Upon the Death or Re-Marriage of My Wife Minnie G. Whitehead I want the balance of My Estate to be Equally divided between My Brothers Joseph Whitehead - J. Hurt Whitehead - Walter M. Whitehead and My Sisters Nannie D. Whitehead - Sallie B. Millner - Ethel M. Crider - Katie G. Watson - I also want my Niece Virginia Rorer and My Nephew Douglas J. Whitehead to Share and Share alike My Brothers & Sisters   I also Want My Nephew Richard H. Whitehead and Katie D. Whitehead My Niece Jointly to have as much together as any one of the above Mentioned In event any of the Brothers - Sisters Nephews or Nieces are dead at the time of this distribution I direct that the Shares of the deceased ones be Equally divided between the ones that are lieving.

In Witness Whereof I have hereunto Set my hand and seal this the 6th day of April, 1935 at 10:20 O'clock P.M. at Home.

R. D. Whitehead"

The learned chancellor construed the will to give Minnie G. Whitehead, the testator's wife, a life estate in his property and upon her death or remarriage the principal to pass to his brothers and sisters and his nieces and nephews in accordance with such relationship, and the life estate

of Minnie G. Whitehead to be charged with the annual payment of $150.00 for the benefit of the testator's sister, Nannie D. Whitehead.

Minnie G. Whitehead was granted an appeal from the decision of the chancellor, hence the case is before us.

Mrs. Whitehead's contention is that she takes a fee simple estate in all of the property of which her husband died, seized and possessed, under the express terms of his will, and that after having thus disposed of his entire estate an attempt, if made, to engraft thereon a limitation over, or to make provision therefrom for an annuity, would be futile because the law does not allow it. The simple proposition, she urges, is that if one devises to another all that he has, in fee simple, it is a complete divestiture of his estate and that is the end of the matter.

This court has so often had before it the task of construing wills, of a similar nature, that the legal principles involved may be said to be settled. It is only their application to varying language and differing conditions that gives trouble.

It has been said before that the key which unlocks the door to every will is the intention of him who makes it. It is the duty of the court to ascertain that intention. Its source is the will itself viewed in the light of environment, relationship, duty and other allowable circumstances and conditions surrounding the testator, which might almost be termed the imponderables of the situation.

Let us examine with care the whole will, including a very peculiar heading at its beginning. It is this: "Since the Death of my Brother J. J. Whitehead I think I shall write a Will like I want it." This is indented and just opposite are these words: "Two days after the Burial of Cousin J. Hunt Hargrave."

If these two statements have any significance they seem to indicate a thoughtful and meditative state of mind. The first statement is signed, "R. D. Whitehead." What effect his brother, J. J. Whitehead, if living, would have had upon his making such a will as he desired, we cannot even con-

jecture. That there was something in the nature of a deterrent we cannot doubt. At any rate he was in a position to write a will as he wanted it. The second statement reveals the fact that he was thinking of the uncertainty of life and the certainty of death, for he was mindful of the burial of a relative just two days before. Now how would a natural, normal, just man, with these reflections, want his will to be? Mr. Whitehead was 63 years old at the time of his death and about 60 at the time he wrote his will. He had lived in Pittsylvania county, Virginia, all of his life and had accumulated an estate valued at $63,000. It does not appear when he was married but it is fair to surmise that Mrs. Whitehead had been his wife for a number of years. If so, necessarily, she had helped him accumulate this fortune and had been a devoted and faithful wife. The confidence in which she was held by him, evidenced by the terms of the will, justifies this statement. He named her as his personal representative and requested the court to relieve her of the onus of furnishing security or an appraisement of his estate. He thus shielded her from the burden of the usual and legal requirements, which are intended to safeguard an estate of such nature and value. It would be difficult to conceive how a husband could exhibit a greater degree of confidence, affection and care for a wife than there is shown to have existed in this instance.

Just before the designation of his wife as his personal representative are these significant words: "The Balance of my Estate (after first providing for the payment of his debts) I give to My Wife Minnie G. Whitehead Both real and Personal also Cash, Bond Stocks and Insurance in fee Simple." If apter words could be employed to express an entire absolute estate we would hardly know how to select them. Following these words, without punctuation, however, are these: "I hearby Nominate and Appoint My Said Wife Minnie G. Whitehead as Administratrix of this My last Will and request the Court not to require any Security or Appraisement of her as Such." If he had stopped there and signed his name it would have been a

complete will and a complete disposal of his property, and it was the latter, we think. This was the paramount scheme of disposition of his estate that he had in mind. It was the will of a natural, normal, just man, written like he wanted it to be, as he declared in the statement at the beginning.

But someone may say, you have left out of consideration at least one-half of the wording of the will. Our observation as to that is that what we have left out of consideration, up to this time, is, in law, a futile effort to engraft upon a fee simple estate a remainder over and a provision for an annuity, which, if it were mandatory, simply cannot be done. The testator wanted his wife, his companion through the years, his helpmeet, she whom he must keep, "forsaking all others," to have his property outright and he said so.

Next, he requests his wife to give his sister $150.00 a year as long as she (his wife) lives and has the money to give her. Those words import two things, the first is a request that she should do a certain thing for a certain length of time if she had the money to do it with, and the second is the possibility of her not having the money. We do not know what this supposed eventuality could be, but it was in his mind. If it were held to be more than a request it would be illegal for the reason already stated. If it were only a request, she could act upon it or not as she might choose. It might be construed as a challenge to her conscience, which, to the testator's mind, would not be in vain, if she had the money. It also imports a third thing, which is that Mrs. Whitehead had the right to use the property, to expend it or do anything that she desired with it. It was hers. He had given it to her by terms signifying the highest right of title known to the law.

Here he projects his mind further into the future and envisions the possibility that, upon the death or remarriage of his wife, there might be a balance of the estate left, and if so, he wanted it to pass to his brothers and sisters and nephews and nieces and, in this event, when the possible

division takes place, he uses the descriptive words "at the time of this distribution, etc." To our minds this is only an effort to take care of a possible eventuality. The word "balance" used twice to denote a residue implies complete dominion of the estate by his wife. If there should be a balance upon her death then the natural, normal, just man would wish it to go to his blood kin. And if there should be a balance upon her remarriage the natural presumption would be that she would not need it. But that there might not be a balance in either event was plainly in his mind. After the devise to his wife in plain and unmistakable terms of all that he had there follow no words that are intended to hew down or impair her perfect estate in the property. This, in our judgment, was his intention and the whole will expresses it.

Several times we have said that the decided cases afford little help in arriving at the true meaning of the particular will, as no two wills are precisely alike and much may depend upon a single word or a single phrase. There are some cases that are very like this one, and none more so than the case of *Wornom* v. *Hampton Normal and Agricultural Institute,* 144 Va. 533, 132 S. E. 344, in which the opinion was written by the late Chief Justice Prentis. There the testator gave to his wife all of his property absolutely and in fee simple, to use and dispose of as she might desire. And in the same clause he gave to his daughter in fee simple a certain lot in the town of Hampton. This gift was held "invalid under the *May* v. *Joynes* (20 Gratt. (61 Va.) 692) *Case* and the unbroken line of other cases which enforce the rule there stated."

The opinion continues: "The appellant does not deny the established rule upon which this conclusion is based, but rests her contention upon other rules which may be thus expressed: (a) That where there is an inconsistency between a general and a specific provision, the specific must prevail, no matter in what order they may come; and (b) that when two clauses of a will are repugnant the latter ought to prevail. All rules with reference to wills, how-

ever, are subject to this, that the underlying principle always is that in the construction of wills the intention of the testator, if it is legal and can be determined, is controlling. All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial. *Marcy* v. *Graham,* 142 Va. 285, 128 S. E. 550."

This court has expressed itself upon this subject in a number of cases which we think it is unnecessary to review. Some of them are *Davis* v. *Kendall,* 130 Va. 175, 107 S. E. 751; *Blakenbaker* v. *Early,* 132 Va. 408, 112 S. E. 599; *Skinner* v. *Skinner's Adm'r,* 158 Va. 326, 163 S. E. 90; *Farmers Bank* v. *Kinser,* 169 Va. 69, 192 S. E. 745.

In the *Wornom* v. *Hampton Normal and Agricultural Institute Case, supra,* we find the following which is pertinent and applicable here:

"In *Jesson* v. *Wright,* 2 Bligh's Rep. (N. S.) 57, this is stated: 'It is definitely settled as a rule of law that where there is a particular and a general or paramount intent, the latter shall prevail, and the courts are bound to give effect to the paramount intent.' "

We have said that it is clear to us that the paramount intent of Mr. Whitehead was to give Mrs. Whitehead his property in fee simple and, of course, accord to her the complete dominion and control of it. If he had a particular intent with reference to other persons it must yield to the intent that is paramount.

In the case of *Price* v. *Cole's Ex'x,* 83 Va. 343, 2 S. E. 200, it is held that the general intention of the testator, gleaned from the whole will, must prevail over the rule that of two repugnant clauses the latter must prevail.

We are perfectly certain that the paramount intention of Mr. Whitehead was to vest Mrs. Whitehead with dominion over everything which he possessed, and to give to her absolutely all of his property. As this is our view we reverse the decree of the trial court and here enter a decree

carrying into effect the views herein expressed, and we remand the case in the event that anything further is sought to be accomplished, which is not inconsistent with this opinion.

*Decree reversed and case remanded.*

HOLT, J., dissenting.

In the construction of testamentary documents we ascertain, if possible, the intentions of the testator and follow them when we can. This rule, though everywhere acclaimed, is not always enforced, but time has demonstrated its usefulness and has earned for it more than lip-service.

Here it is perfectly plain that this testator intended that sometime, somewhere and in some circumstances these residuary legatees should share in what was left of his estate, should anything be left. The language of the will is: "Upon the death or re-marriage of my wife, Minnie C. Whitehead, I want the balance of my estate to be equally divided between my brothers," etc. To ask us to believe that this testator did not intend and desire that the residue of his estate be in this manner disposed of is to ask the impossible. With his purpose plain, we should follow it if we can.

Mr. Whitehead, a layman, of course thought that his wishes would be respected and in this simple faith said: "I think I shall write a will like I want it." All that can be said about this is that he was wrong. A man may do as he wills with his own, only in the event that he does something which the law permits him to do. He is hedged about with rules, some of which would be news to him.

Let us concede for the sake of argument that an estate given to the widow to be held until her death is not a "life estate" and that the "balance" of it in hand upon her death is not a "remainder," and that Code, section 5147, is not applicable.

After all of this, we are still left to determine the effect of the widow's remarriage.

This provision is perfectly understandable. Mr. White-head wished that his wife be left to enjoy every comfort which he could bestow, even though his entire estate be absorbed; but he did not feel it was incumbent upon him to support another man's wife. Such support the second husband may have been expected to supply, and it was with this possibility in mind that he then turned to his next of kin. All that he did was natural and might have been expected; he gave them what was left.

The problem thus presented is in a large measure answered by Mr. Justice Spratley in the late case of *Trice* v. *Powell*, 168 Va. 397, 191 S. E. 758. The pertinent part of the will there under construction reads:

"2ND: That I give and bequeath to my sister, Nannie Goodwin, all money & bonds and the entire landed estate to do as she thinks proper, so long as she remains single, but if she marries it is to be sold and divided between the heirs of body of Julia D. Kuper, Mattie W. Powell & Robert Goodwin, and she to retain one-fourth of said sale, and in the event of her death intestate, it is to be divided as .above stated."

In telling us of his true intent, he said:

"Taking up the words, phrases and clauses one by one, we find that the testator first gave and bequeathed to his sister, Nannie Goodwin, 'all money and bonds and the entire landed estate to do as she thinks proper, so long as she remains single,' etc. If the will had stopped after the word 'estate,' there is no question but that a fee simple would have been conveyed, words of limitation being no longer necessary in this State. But since the will does not stop there, we must construe the meaning and effect of the words which follow. It should be noted here that the word 'do' is employed and not the word 'use.' The word 'think' in general, is defined by the dictionaries to have a meaning equivalent to 'consider,' 'believe,' or 'conclude.' Evidently, what she should 'do' with the property, was left to her discretion as to what she considered, believed, or concluded proper. The word 'do,' read in connection with language

following it, has a broader meaning than the word 'use.' It does not confine her to a mere use of the property for her benefit but imports an enlarged control and right thereover. It cannot be conceived that anyone could have a greater or more extensive power over property than the right to do with it as he or she may think proper. The several words import all the attributes of a fee simple, which is absolute except for the provision terminating it. Nor can we take away such a valuable right, so explicitly conferred, without good reason therefor.

"We then arrive at the conclusion, that whether we end the clause after the word 'estate,' or after the word 'proper,' a fee simple estate is conveyed, subject only to such limitation as is placed thereon by the language 'so long as she remains single,' annexed thereto. These later words mark out the utmost period during which the estate conveyed to her may endure. The clause 'but if she marries,' is but another expression confining the disposition of the estate to a period 'so long as she remains single.' Both clauses, 'but if she marries,' and 'in the event she dies intestate,' are words of defeasance with a meaning so clear and distinct that little doubt can be entertained that they established a special limitation upon the fee simple."

In each of these cases, the widow took over her husband's estate, real and personal. In each of them, she had the power to do with that estate whatever she considered, believed, or concluded to be proper; and each estate was subject to this limitation—it was to terminate upon remarriage. If one estate was defeasible, the other was.

That is to say, the will is given the same construction that should be given to it were we to substitute for, "That I give and bequeath to my sister, Nannie Goodwin, all money & bonds and the entire landed estate to do as she thinks proper," "I give in fee simple to Nannie Goodwin all my money and bonds and entire landed estate." In either event, she would have been left to "do" with the estate what she thought proper. "It cannot be conceived that anyone could have a greater or more extensive power over property than

the right to do with it as he or she may think proper." What was taken in the *Trice Case* was a defeasible fee which might have been defeated upon remarriage; and that is this case. Courts should not be alert to explain away what is plain upon its face.

There is no magic in "fee simple." A defeasible fee of necessity presupposes the granting of a fee which afterwards may be determined. 1 Washburn Real Estate (6th Ed.), sec. 140; 2 Minor's Inst. (3rd Ed.), p. 86; Graves Notes on R. P., sec. 37.

There can be no doubt what is meant by "the balance of my estate." Whitehead, in his will, directed first that his debts be paid. "The balance of my estate" he gave to his wife and upon her remarriage "the balance of my estate" he gave to his next of kin. The "balance" is "the remainder; the rest." Webster's International Dictionary. If a depositor asked of a bank what his balance was, no one could doubt what he wanted. As Mr. Justice Spratley said, "We will not hesitate to give to the words and phrases used the meanings which they have in the usual and ordinary acceptations." The provision which gave to the sister, Nannie B. Whitehead, $150 a year must fail, and those which deal with the disposition of the estate upon the death of ·the widow must, under the rules of *stare decisis,* fail also. *Skinner* v. *Skinner's Adm'r,* 158 Va. 326, 163 S. E. 90; *Southworth* v. *Sullivan,* 162 Va. 325, 173 S. E. 524. But should a remarraige come to pass, then these next of kin should take, for the wife's estate in whatever may be then left is thereby defeated, and it is to this extent that I find myself compelled to dissent.