## Richmond

JOSEPH WHITE SMITH AND ELIZABETH WALKE SMITH V. TRUSTEES
OF THE BAPTIST ORPHANAGE OF VIRGINIA.

April 20, 1953.

Record No. 4058.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Langhorne Jones,* for appellants.

. *Woods, Rogers, Muse & Walker, Robert S. Irons,* for appellee.

BUCHANAN, J., delivered the opinion of the court.

The question presented on this appeal is whether a codicil to the will of William Smith created a trust with respect to his residence property which he had previously devised in the body of the will to his son in fee simple.

William Smith was a lawyer who had practiced in Pittsylvania county for forty-two years. He died February 23, 1942, leaving a will dated February 20, 1939, to which was attached a codicil dated February 13, 1941, all in his own handwriting. He was survived by his wife, who later died on August 27, 1951, and an only son, Joseph White Smith. This suit was brought after the death of the widow by Joseph White Smith and his wife to construe the will. It resulted in a decree holding that under the will and codicil Joseph White Smith took the legal title to the residence property upon the express trust that upon his death without issue it would go to the trustees of the Baptist Orphanage, appellees, subject to the life estate of his widow. The appellants contend that the son took a fee simple estate and that the precatory words of the codicil did not create a trust.

The controversy develops around Clause (2) of the will and the codicil. Clause (2) is as follows:

"I give and devise my residence and lot on South Main Street, Chatham Va. the lot having been obtained from-the Keatts the year 1910, to my beloved wife Linda White Smith for and during her life and at her death to my son Joseph White Smith in fee simple."

This is the codicil dated, as mentioned, nearly two years after the date of the will:

"Recognizing the possibility that my son Joseph White Smith may die without issue or lineal descendants him surviving in the event no issue or descendants survive it is my wish that he after providing a home for life for his widow, will my residence and lot on South Main St. Chatham Va mentioned in clause (2) above to the Board of Trustees of the Baptist Orphanage located at Salem Va and their successors in office for the support and maintenance that institution.

"This codicil is added to my will of Feb. 20, 1939.

"Feb. 13, 1941"

The will and the codicil are, of course, to be taken and construed as parts of one and the same instrument, and the dispositions of the will are not to be disturbed further than is necessary to give effect to the provisions of the codicil. Thompson on Wills, 3d ed., § 38 at p. 77, § 167, p. 259; 1 Harrison's Wills and Administration, § 193(6), p. 384; *Simmons* v. *Gunn,* 156 Va. 305, 309, 157 S. E. 573, 574; *Hope Natural Gas Co.* v. *Shriver,* 75 W. Va. 401, 83 S. E. 1011, 1016.

In construing the will thus constituted, the objective is to determine what the testator meant by what he wrote. His intention, as has often been said, is the guiding star, the key that unlocks the door, and when ascertained, effect will be given to it unless it violates some rule of law or is contrary to public policy. *Conrad* v. *Conrad's Ex'or,* 123 Va. 711, 716, 97 S. E. 336, 338; *Wornom* v. *Hampton N. & A. Inst.,* 144 Va. 533, 541, 132 S. E. 344, 347; *Whitehead* v. *Whitehead,* 174 Va. 379, 382, 6 S. E. 2d 624, 625.

In an effort to bolster their contention that Joseph White Smith took a fee simple estate under the will, the appellants gave their depositions, from which it appears that they were married in 1935, had no children of their own but had adopted a child; that the testator was very desirous that they have children; that the testator was an active member and officer of the Baptist church, but had never, until the time when he discussed the codicil with appellants, expressed any interest in the Baptist Orphanage.

Appellants also testified that about a year before testator died he called them to his office, read the will to them and discussed with them the codicil which had not then been signed; that he told them the codicil was only his wish; that if his son did choose to let the Orphanage have the residence property, then he wanted a plaque or something of that kind put up as a memorial to the testator; that the codicil would not prevent a sale of the property by the son to take care of his mother during her life if needed. The court held these declarations of the testator to be inadmissible and the appellants assign error to that ruling.

The ruling on that point was correct. Where there is necessity for interpretation, extrinsic evidence of what is called the

facts and circumstances, *i. e.*, facts that concern the testator, his property, his family, the claimants under the will, their relation to the testator, and like matters, may be introduced; but there is only one situation in which evidence of the testator's declarations of intention may be admitted, and that is where the will describes equally, well two or more persons or things and such declarations are offered to show which was meant, called a case of equivocation, *Coffman's Adm'r* v. *Coffman,* 131 Va. 456, 465, 109 S. E. 454, 458, following the rules set forth by Professor Graves in his classic article "Extrinsic Evidence in Respect to Written Instruments," 14 Va. Law Reg. 913; *Rule* v. *First Nat. Bank,* 182 Va. 227, 233-35, 28 S. E. 2d 709, 711; Annotation, 94 A. L. R. 26, 263, 266.

Appellants' main contention is that the circuit court erred in holding that a trust with respect to the residence property was created by the will and codicil. That question is to be resolved from the instrument itself, with such small aid as is given by the facts and circumstances in evidence. No trust is created in terms and if one exists it is by virtue of the precatory words of the codicil "it is my wish that he * * * will my residence and lot" to the Orphanage.

In 1 Harrison's Wills and Administration, § 280, pp. 565-66, it is said:

"At one time precatory words were given almost as much potency, as words of unqualified command, but under the modern decisions in many jurisdictions, there must be something more than the mere use of precatory words to stamp upon an estate given a trust. However, the decisions in Virginia and West Virginia appellate courts do not show the same degree of relaxation that appears in the decisions of other states."

The latter statement, as relates to Virginia, was based on the holdings in *Harrison* v. *Harrison's Adm'x,* 43 Va. (2 Gratt.) 1, and *Seefried* v. *Clarke,* 113 Va. 365, 74 S. E. 204. In the former, a testator left to his wife his whole estate in fee simple "only requesting her to make an equal distribution amongst our heirs." In the latter a testatrix devised to her husband all of her estate, "with one simple request, that the said estate be divided with my children, or its equivalents, as his better judgment may direct." In both cases it was held that trusts were created.

The opinion in the *Seefried* case subscribed to the view that

the question in all cases is whether a trust was intended to be created, but in the absence of light from the context of the will, the court applied the early rule followed in England and in this country, that precatory expressions ought, *prima facie,* to be considered as imperative and to exclude discretion; that the wish of a testator, no matter how expressed, should be regarded as a command. In a comprehensive annotation on precatory trusts in 49 A. L. R. 10, at page 16, it is stated, with support from the cited decisions, that the later English cases and most of the American cases have repudiated that rule and reversed the presumption, holding that words of request or expectation are presumably indicative of nothing more, unless the context, or the circumstances surrounding the testator when he made the will, show that he really meant to leave the devisee no option in the matter. An exception to the latter rule is that words of recommendation or request addressed to an executor are uniformly considered *prima facie* testamentary and imperative. *Idem,* p. 31. The author of the annotation discerns a reluctance on the part of the courts to give precatory expressions the force of commands in the fact that cases holding that no trust was created by such words are greatly in the majority. *Idem,* p. 20. To the same effect are annotations in 70 A. L. R. 326 and 107 A. L. R. 896.

As stated in the *Seefried* case, the question in all cases is whether a trust was or was not intended to be created; *i. e.,* looking at the entire context of the will and the facts and circumstances properly admitted into evidence, did the estator intend to impose a binding obligation on the devisee to carry out his wishes, or did he mean to leave it to the devisee to act or not at his own discretion? Thompson on Wills, 3d ed., § 419, p. 618; 49 A. L. R. 22; 70 A. L. R. 328; 107 A. L. R. 900. The recent decisions of this court have dealt with the question in the same manner as the majority of the courts of the country.

In *Farmers Bank* v. *Kinser,* 169 Va. 69, 75, 192 S. E. 745, 748, this statement from 22 Amer. & Eng. Ency. of Law (2d ed.) page 1165 was quoted with approval.

" 'The weight of modern authority lays down the rule that in each case the whole will and the situation of the parties must be looked to, and unless it appears therefrom that a trust was intended, none will be held to exist.' "

It was held in that case that a devise by a testator to his wife

of all his interest in their farm, together with all the stock and farm implements, "To have and to hold the same in fee simple and to dispose of the same among the children as she may think best," did not create a trust but vested in the wife the absolute title. The *Harrison* and *Seefried* cases, together with *Bare's Ex'rs* v. *Montgomery,* 143 Va. 303, 130 S. E. 230, were held not to be controlling.

In *Whitehead* v. *Whithead, supra,* 174 Va. 379, 6 S. E. 2d 624, the testator devised the balance of his estate after the payment of debts to his wife in fee simple, following which was a "request" that she give his sister $150 a year as long as she lived and had the money to give her, which in turn was followed by the statement that upon the death or remarriage of the wife "I want the balance of My Estate to be Equally divided between My Brothers," with shares to certain nephews and nieces. It was held that the wife took a fee simple because that was the paramount intention of the testator.

In *McKinsey* v. *Cullingsworth,* 175 Va. 411, 415-16, 9 S. E. 2d 315, 317, it was said:

"The tendency of modern decisions, in many jurisdictions, is to require more than the mere use of precatory words to stamp a trust upon an estate given to another. This relaxation of the older English rule, which gave precatory words almost as much potency as words of unqualified command, is favored in Virginia. *Farmers Bank* v. *Kinser,* 169 Va. 69, 75, 192 S. E. 745."

There a will was in the form of a letter, saying, "I want you to have my home and everything and you take care of Lula the best you can." It was held that the addressee took the entire property of the testatrix in fee simple with no charge against it in favor of Lula. It was repeated in that case that the *Seefried* case was not controlling because the direction in the latter was imperative.

In the light of the reasoning and conclusions in these later cases we conclude that no trust with respect to the residence property was created by the will under review. It is to be remembered that this will was written by a lawyer who had been practicing for forty-two years. It is to be presumed that he was familiar with trusts and with the simple words sufficient unmistakably to create one. The will itself strongly indicates that he had clearly in mind the difference between a wish and a command, between a desire and an actual disposition.

In Clause (1), in his direction to his wife to pay his debts, which he knew was required in any event by the law, his expression was ''I desire;'' and in Clause (6) he stated it to be his ''desire'' that his wife sell such personal property as she did not wish to keep and from the proceeds, together with his insurance, to pay debts, burial expenses and the sums given his son and daughter in other clauses of the will.

But in Clause (2), in devising the residence property to his wife for life and at her death to his son Joseph ''in fee simple,'' his words were dispositive,—''I give and devise.''

In Clause (3) he wrote ''I give to my son'' $100 together with certain items of a personal nature ''and other family relics.'' Then he added: ''It is my desire that he pass the family relics on to some one of our family, bearing the name Smith.'' In Clause (4) he said ''I give to my daughter in law'' $50.

In Clause (5) he wrote: ''Having full confidence in my beloved wife * * * to do the right thing and good part by our son * * * I give and devise to her all the residue of my estate,'' with power to sell the real estate, except the residence property, as may be necessary for her support. Should any of this real estate remain undisposed of at her death ''it is to go to my son * * * in fee simple.'' Clause (7) names his wife as executrix and requests that she be allowed to qualify without security. That is all of the will except the codicil, which is quoted above.

It seems clear that the testator chose the words of his will with knowledge of their meaning; that he knew the words to use when he came to give his property to the objects of his bounty. If he had intended by the codicil to take away from his son the remainder in fee that he had given to him in express terms in the body of the will, and to impose upon that property a trust in favor of the Orphanage, he knew how to do that and could have done so by his own will. Instead, he expressed in his codicil only a wish that his son would ''will'' the property to the Orphanage in case he had no issue or descendants to survive him, and after providing a home for life for his widow. He did not provide by his own will that the title should vest in the Orphanage upon the death of his son without issue, as he could readily have done had that been his purpose. He merely said that it was his wish that his son should will it to the Orphanage under circumstances which might later come about. He was content to make no testamentary provision himself to effect the transfer

but to rely upon his son to carry out his wish. That wish, expressed in a codicil long after he had devised to the son the same property in fee simple, was not sufficient to create a trust for the benefit of the Orphanage. *Dexter* v. *Young,* 234 Mass. 588, 125 N. E. 862.*

The fee simple estate expressly given to the son in the body of the will is not diminished or destroyed by a mere wish expressed in the codicil that he would in turn will the property to the Orphange if there was no issue to survive the son.

"It is a settled rule of construction, both in deeds and wills, that if an estate is conveyed, or an interest given, or a benefit bestowed in one part of the instrument, by clear, unambiguous, and explicit words, such estate, interest, or benefit is not diminished nor destroyed by words in another part of the instrument, unless the terms which diminish or destroy the estate before given be as clear and decisive as the terms by which it was created." *Gaskins* v. *Hunton,* 92 Va. 528, 531, 23 S. E. 885, 886. *Farmers Bank* v. *Kinser, supra,* 169 Va. at p. 73, 192 S. E. at p. 747; *McKinsey* v. *Cullingsworth, supra,* 175 Va. at p. 417, 9 S. E. 2d at p. 317; *Evans* v. *Ockershausen,* (App. D. C.) 100 F. 2d 695, 702.

The decree appealed from is reversed and the cause remanded for the entry of a decree holding that the will devised to Joseph White Smith the property described in Clause (2) in fee simple after the death of his mother, not impressed with a trust in favor of the Orphanage by the codicil thereto.

*Reversed and remanded.*

---

* Some of the cases reaching the same conclusion on similar facts are: *Estill* v. *Ballew,* — Mo. —, 26 S. W. 2d 778, 70 A. L. R. 321; *In re Campbell,* 209 Iowa 954, 229 N. W. 247; *In re Hayes' Will,* 263 N. Y. 219, 188 N. E. 716; *Dixon* v. *Hooker,* 199 N. C. 673, 155 S. E. 567; *Brubaker* v. *Lauver,* 322 Pa. 461, 185 A. 848; *In re Stuart's Estate,* 274 Mich. 282, 264 N. W. 372.