## WILL OF DEVER.

*December 15, 1920—January 11, 1921.*

*Wills: Construction: Intent of testator: Ambiguity: Extrinsic evidence: Bequest "in trust" as vesting absolute ownership.*

1. In construing a will the constant effort of courts is to ascertain and give effect to the intention of the testator.

2. Where testator, after making certain devises in his will, gave the residue of his estate to certain named persons *in trust,* and said no more, an ambiguity as to whether he intended a trust in the true legal sense arises, and to resolve such ambiguity the court may consider the extent of the estate, testator's family relations, his attitude towards his next of kin, and his relations with those claimed to be his beneficiaries under that clause of the will where the expression "in trust" occurs.

3. Under the circumstances—testator being an uneducated man, having as his only relatives an aged aunt in a distant state and two cousins, with none of whom he had been particularly intimate and for whom he had made generous provision in the will, and the persons named as residuary legatees being his daily associates, who had extended to him their friendship and the hospitality of their homes, and the fact that the testator in drawing his will had before him the will of his

deceased brother which he used as a form and which contained trust features none of which testator followed,—a clause leaving the residue of his estate "in trust" to his executors, with direction that they be not required to furnish bond and might use their best judgment, is *held* not to have created any trust; the phrase "in trust" having been used in its popular sense, expressive of the confidence which testator reposed in his executors.

APPEAL from a judgment of the county court of Milwaukee county: JOHN C. KAREL, Judge. *Affirmed.*

The appeal is from a judgment construing the residuary clause of the will of Thomas P. Dever, deceased. Thomas P. Dever died January 12, 1920, aged about sixty years, without issue, widow, parents, brothers, or sisters surviving. The petitioner is his aunt, a woman about sixty-six years of age, his only surviving relative in the third degree of kindred, and therefore sole heir at law next to kin. On February 26, 1919, the testator, while on a visit in the city of New Orleans, accompanied by Dr. Bradley of Milwaukee, went to the office of a friend named Bertaut, and there, from his own written memoranda, dictated and afterwards executed the will in question. After the usual clauses the will made devises and bequests as follows: to petitioner, *Katherine Orr,* certain real estate of the value of about $4,000 and $3,000 in government bonds, amounting in the whole to about $7,000; to two cousins, the sum of $2,000 and $3,000 each, respectively; to various charities, six in number, the sum of $3,200; to his housekeeper, Annie Dorn, certain real estate, household goods, and $3,000; and to *Henry Thompson,* one of the executors, personally, $10,000; for the perpetual care of family cemetery lot, $500. Then follows the residuary clause in this language:

"The residue of my estate I leave in trust (including any stock of Dever Bros. Paper Company, Dever Realty Company, owned by me) to *J. F. Dahlman, Henry M. Thompson,* and *Edward W. Spencer,* and I do hereby direct that they be not required to give or furnish any bond, as my executors, and use their best judgment."

The judgment of the county court construed said residuary clause as a valid devise and bequest of the residue of the estate of said deceased to *J. F. Dahlman, Henry M. Thompson,* and *Edward W. Spencer,* personally, and that it was not the intention of the testator to create a trust by such residuary clause. From the judgment so entered the petitioner appealed.

*Paul D. Carpenter* of Milwaukee, for the appellant.

For the respondents there was a brief by *Lawrence A. Olwell,* attorney, and *Louis A. Dahlman* and *Bernard V. Brady,* of counsel, all of Milwaukee; and the cause was argued orally by *Mr. Olwell.*

OWEN, J. It is the contention of the appellant that by the language of the residuary clause of the will the testator attempted to create a trust, which is void for uncertainty and indefiniteness, and that the residue of the estate should be disposed of as intestate property. It is conceded that if the testator did intend to create a trust it is too indefinite and uncertain to be administered, and the attempt failed. The question here is, Did the testator attempt to create a trust? Appellant's contention in this behalf is based entirely upon the use of the phrase "in trust" in the clause of the will under consideration, which it is claimed conclusively reveals the purpose of the testator to create a trust. Counsel hazards the statement that he knows of no case in which any court, despite much general language as to intention, has ever wiped out of any will the plain words "in trust."

In construing a will the constant effort of courts is to ascertain and give effect to the intention of the testator. The phrase "in trust" or "upon trust" has a well settled technical meaning, and when used advisedly in a will in connection with a devise or bequest affords rather plain evidence of the intention of the testator. This, we say, is the result where the words have been used advisedly. As was said of this, or a similar, phrase in *Davies v. Davies,* 109 Wis. 129 (85 N. W. 201) at p. 133:

"Had these words been used by a trained lawyer, the argument that they must receive their true technical meaning would be strong; but here the fact that they were used by a layman, albeit an educated man, is of great importance. The word 'trust,' in its popular sense, covers many things besides the legal and technical trust."

In *Danforth v. Oshkosh,* 119 Wis. 262 (97 N. W. 258) at p. 276 it is said:

"Of course, the presence or absence of words declaring an estate to be in trust is not conclusive, though they may be more or less significant of the purpose in the grantor's mind. [Citing.] The question is whether the testator's intent involved the elements of a trust as known to the law."

These expressions sufficiently indicate that this court has not considered the use of these words as conclusive of the intention of the testator, and has not felt precluded from making further inquiry concerning such intention merely because the phrase "in trust" or "upon trust" is used in connection with a devise or bequest contained in a will. We are also impressed with the thought that where a testator says he gives "in trust" or "upon trust," but makes no attempt to prescribe the terms or purposes of the trust, a court may well pause and consider whether it was really the intention of the testator to create a trust in the legal sense. When the phrase "in trust" or "upon trust" is used advisedly, he who uses it understands that the terms and conditions of the trust must be defined with definiteness and certainty. When a testator says he gives "in trust" and says no more, the query most naturally arises as to whether the phrase was inserted for the purpose of creating a trust in the true legal sense. We think such a situation gives rise to an ambiguity, and the court may summon to its aid all legitimate considerations that will enable it to determine the intent of the testator with reference to the disposition of the residue of his estate. It will be proper, therefore, for us to consider the extent of his estate, his family relations, his attitude towards his next of kin, and his relations with those who claim to be his beneficiaries under the residuary clause.

Before proceeding to such considerations, however, we may properly refer to the important fact that the testator was an uneducated man, that he personally dictated the will, and there is much less reason for supposing that the phrase was used in its legal and technical sense than if the will had been prepared by a lawyer, or even an educated man. Then, too, the context in which it appears in and of itself indicates great trust and confidence in the three men named. He constitutes them the executors of his will and directs that they be not required to give or furnish any bond, and, whether the testator did or did not intend to create a trust, it appears that he confided to them the disposition of the greater portion of his estate. This circumstance in and of itself furnishes strong justification for the conclusion of the learned county judge that "he used these words in a general or popular sense, denoting trust, confidence, faith or reliance, the confidence, faith, belief or reliance resulting from intimate friendship and association for many years, that they as executors would make such disposition of the residue of his estate as they might determine upon."

We think this conclusion is also strongly reinforced when we consider the other circumstances which we have indicated may be considered as bearing upon this question. The testator was a man sixty years of age and had no kinship of the first degree: no wife and no children, no father or mother, sister or brother. His closest blood relative was the petitioner, *Katherine Orr*, an aunt, who was around seventy years of age, and who had long been a resident of California. It does not appear that any particular intimacy existed between the testator and this aunt. He also had two cousins whom he remembered in his will. The total value of his estate approximated $140,000. His specific bequests did not exceed $40,000. The residue of his estate amounted to about $100,000. Of his relatives, the petitioner, his aunt, received most generous consideration. But her legacy did not exceed the legacy to his housekeeper nor the specific

legacy to *Mr. Thompson.* This indicates that he did not recognize superior claims on the part of his relatives to his gratitude and his bounty. And this, we think, was not unnatural. His aunt was an aged woman, older than he, living in a distant state. The evidence shows no particular intimacy between them. The record likewise fails to show affection or intimacy between the testator and his cousins, who were remembered in the will. On the other hand, it is shown that the testator had been a lifelong resident of the city of Milwaukee. The three men mentioned in the residuary clause were his daily companions and associates. He met and mingled with them daily not only at their clubs, but he was a frequent caller at their homes and the recipient of cordial hospitality by their families. He sought their personal companionship and courted the glow and warmth of their firesides. No doubt they had contributed more than his distant relatives, or any others, to the comfort and happiness of his celibate life. Under these circumstances it is neither unnatural nor surprising that he made them the objects of his solicitude and his bounty. As already remarked, his predisposition so to do is clearly revealed by his specific bequest of $10,000 to *Mr. Thompson.* We do not consider this circumstance as an indication that *Mr. Thompson* was remembered to the exclusion of the others, but rather, for reasons known to himself, he desired to show *Mr. Thompson* this special mark of gratitude.

Counsel for respondents urge another consideration which is not without force to indicate an absence of purpose on the part of the testator to create a legal trust. In drawing the will the testator had before him the will of his deceased brother. In that will the testator had been appointed the trustee of an express trust, which he had administered under the guidance of his attorney, *Mr. Spencer,* who is one of the residuary legatees here. He had copied the opening paragraphs of the will verbatim and in making specific legacies had closely followed the language of his brother's will,

notably the legacy to the petitioner here and his two cousins. The trust provisions of his brother's will were ample and lawyer-like.  He however made no attempt to follow the trust features of his brother's will.  That, if it had been his purpose to create a trust, he would have availed himself of the form embodied in that will, which he followed so closely in other respects, seems highly probable.  We think this is a legitimate argument and entitled to more than passing weight in arriving at a determination as to what the testator's intention was.

We feel satisfied, from all the circumstances, that the county court arrived at a correct conclusion.  We think the phrase "in trust" was used by the testator not in its technical and legal but in its popular sense, and that in the connection in which  it was thus used it was intended to be expressive of the trust and confidence which the testator reposed in his lifelong friends and associates, and that it was his intention that they should take the residue of the estate, to use or dispose of as they might see fit.  A gift of this kind carries with it absolute ownership.  *Tinsley's Will* (Iowa) 174 N. W. 4; *Ralston v. Telfair,* 17 N. C. 255; *Hill v. Fiske,* 69 Misc. 507, 125 N. Y. Supp. 1026; *Higginson v. Kerr,* 30 Ont. 62; *Cheney v. Plumb,* 79 Wis. 602, 48 N. W. 668; *Bristol v. Bristol,* 53 Conn. 242, 5 Atl. 687; *Barnett v. Barnett,* 117 Md. 265, 267, 83 Atl. 160.

*By the Court.*—Judgment affirmed.