# Richmond

## William L. Burton, Individually, Etc. v. Virginia Dare Burton Irwin, Et Al.

June 14, 1971.

Record No. 7474.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*John W. Edmonds, III (David J. Mays; Herndon P. Jeffreys, Jr.; J. Edward Lawler; Mays, Valentine, Davenport & Moore; Jeffreys and Lawler,* on brief), for appellant.

*Eppa Hunton, IV (Richard McDearmon; Brockenbrough Lamb, Jr.; John H. O'Brion, Jr.; Thomas G. Slater, Jr.; John B. Ashton; Christian, Barton, Parker, Epps & Brent; Browder, Russell, Little & Morris; Hunton, Williams, Gay, Powell & Gibson,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the court.

On this appeal we are concerned with the construction of the holographic will of the late Blanche Burton Mallory.

Mrs. Mallory, a widow 86 years old, died without issue on November 10, 1967, leaving as her heirs at law and distributees two sisters, a brother, various nieces and nephews and great-nieces and great-nephews. Her will, admitted to probate in the clerk's office of the Chancery Court of the City of Richmond, reads as follows:

> "Richmond Virginia
> June 26 1962
>
> This is my last will & testerment.
>
> I appoint my Brother William L Burton as executor and Trustee of my estate.
>
> To my Brother William L Burton I present herewith & without recourse the accompaning Bonds, Stocks, Mortage Notes, real estate, and Bank Accounts and valuables of all descriptions in my safty box, at First & Merchants Bank Richmond Va. or at home or any other place in Richmond Va.
>
> My Brother knows my wishes and will carry them out, to the best of his ability.
>
> Blanche Burton Mallory"

Mrs. Mallory's brother, William L. Burton, qualified as Executor and entered into bond in the penalty of $800,000.00, without security.

Thereafter, a sister, the personal representative of a sister who died after Mrs. Mallory's death, five nieces and nephews, two great-nieces and a great-nephew instituted this chancery suit by filing their bill of complaint against the brother, William L. Burton, and two infant heirs at law and distributees of Mrs. Mallory. Complainants therein alleged that Mrs. Mallory's estate was devised and bequeathed to Burton to hold "for the benefit of her heirs and next of kin". Burton filed his answer thereto asserting that he was entitled to the entire estate "to the exclusion of her other heirs and next of kin". Subsequently, one of the great-nieces withdrew as a complainant.

Evidence was heard *ore tenus* by the court which held, in a written opinion, that no intention could be found in the language of the will that the brother take fee simple title to the estate. The court concluded that the testatrix attempted to constitute her brother "an executor and trustee for the benefit of unknown persons and purposes" and that a "naked trust was created or implied in favor of the heirs at law and distributees" of the testatrix. We granted Burton an appeal from the final decree entered on September 11, 1969, ordering him as Executor to make distribution of the net estate to the heirs at law and distributees.

[■] The question is whether the testatrix intended to create a trust for undesignated beneficiaries and unspecified purposes which must fail for indefiniteness or whether she intended to leave her entire estate in fee simple to her brother. If she created a void trust then her net estate will be held by Burton as trustee under a resulting trust for the benefit of her heirs at law and distributees. *Sims* v. *Sims*, 94 Va. 580, 584, 27 S. E. 436, 437 (1897).

■ The will must be considered as a whole in order to determine the testamentary intent. It is apparent from her phraseology and errors in spelling and punctuation that Mrs. Mallory had little faculty for expressing herself in writing. Nevertheless, the chancellor concluded that the language of the will was clear and therefore, over objection, he excluded evidence adduced by Burton to show facts and circumstances surrounding the testatrix at the time the will was executed.

Such extrinsic evidence is admissible for the purpose of determining testamentary intent where there is legitimate dispute as to the meaning of words used in the will. *Pitman* v. *Rutledge*, 198 Va. 567, 571, 95 S. E. 2d 153, 156 (1956); *Coffman's Adm'r.* v. *Coffman*, 131 Va. 456, 462-3, 109 S. E. 454, 457 (1921).

We cannot agree that the language of the testatrix was so clear and unambiguous as to make extrinsic evidence inadmissible.

Use in a will of the word "trustee" by a lawyer may clearly indicate that a trust is intended, but the same word written by one not learned in the law, may have an entirely different meaning. A will may be construed to create a trust without use of the words "trust" or "trustee". Conversely, it may be found that a testator did not intend to create a trust although he used such words. Scott, Law of Trusts § 24, p. 192 (3rd ed. 1967); *see In Re Dever's Will,* 173 Wis. 208, 180 N. W. 839 (1921).

Likewise, a testator may bequeath and devise fee simple title to property without using the precise legal terminology normally employed to do so. *See McKinsey* v. *Cullingsworth,* 175 Va. 411, 9 S. E. 2d 315 (1940).

Moreover, precatory words in a will may be construed to create a trust depending upon the language used in the light of all the circumstances. Various circumstances to be considered in determining the testator's intent include the imperative character of the words used, the relations between the parties, their financial situation and the motives which may have influenced the testator. Restatement, Trusts § 25, Comment b (2d ed. 1959).

We therefore conclude that the chancellor erred in excluding the proffered extrinsic evidence. We reject the contention of the appellees that they are now entitled to an opportunity to introduce such evidence. They rested their case solely on the language of the will and then successfully objected to the introduction of extrinsic evidence by Burton. Having thus made a deliberate choice in the exercise of trial strategy, they may not now return to take additional evidence.

The record, including the proffered but rejected evidence of facts and circumstances, reveals that there was an unusually close relationship between Mrs. Mallory and her brother William. She was about 24 years older than he. After their father died when William was nine months old, he and his mother lived with the Mallorys and, after his mother's death, he continued to make his home with them until his marriage at the age of 24. The Mallorys gave him a lot about two blocks away upon which he and his wife built their house. He was in daily contact with Mr. Mallory, called on Mrs. Mallory several times a week and acted as general utility man around their house.

Mr. Mallory died in 1940 a few months after the death of Mr. McCulloh, the husband of a sister of Mrs. Mallory's and Burton's. Thereafter, Mrs. Mallory and Mrs. McCulloh lived together, each year spending six months in Florida in a home owned by Mrs. McCulloh and six months in Richmond in Mrs. Mallory's home.

Burton would drive the two sisters to Florida each fall and fly home, returning to Florida each spring to drive them back to Richmond. Commencing about ten years before the hearing, Burton and his wife went to Florida with the sisters each fall and lived with them during the six months they were there.

When Mrs. Mallory and Mrs. McCulloh were in Richmond, Burton went by every day to attend to Mrs. Mallory's needs. He saw to the upkeep of her property, shopped for her, and took her to the bank, the stockbroker's office and wherever she wanted to go.

Mrs. Mallory's property came from her husband. After his death she converted much of his real estate into stocks and bonds and had only three pieces of rental real estate at the time of her death.

Burton had access to Mrs. Mallory's safety deposit box. He had no income of his own but received some compensation from Mrs. Mallory, who had persuaded him to give up his own business as a manufacturer's representative "in order to look after her problems".

The evidence thus shows a relationship approaching that of mother-son between the testatrix and her brother, financial dependence of William upon his sister and a motive for her to leave her estate to him. In light of these circumstances we consider the language of the Mallory will.

Her brother is the only person mentioned by the testatrix, and he is referred to three times in the brief writing. The word "trustee" is found only once and then in conjunction with "executor". No trust beneficiaries are named nor are any trust purposes specified. The conclusion is inescapable that in naming her brother "executor and Trustee" Mrs. Mallory, acting without knowledge of the legal terminology employed, merely intended that her brother administer her estate.

In the third sentence of the will Mrs. Mallory used the words "I present herewith & without recourse" in disposing of her enumerated assets to her brother. While this is unusual usage of these words for testamentary purposes, there can be no misunderstanding of the verb "present". It is defined in Webster's Third New International Dictionary, p. 1793 (1969) as follows: ". . . to make a present or

donation to: furnish or provide (as a person) with something by way of a present or gift . . . deliver formally for acceptance."

The meaning of the words "without recourse", usually associated with negotiable instruments, is more obscure. But whether they were intended to mean without recourse to the testatrix or without recourse to Burton, the testamentary intent of the entire phrase was to make an unconditional gift, unless the precatory language of the concluding sentence imposed a trust.

■ Precatory words are *prima facie* construed to create a trust when they are directed to an executor. *Smith* v. *Baptist Orphanage*, 194 Va. 901, 905, 75 S. E. 2d 491, 493-4 (1953); 1 Bogert, Trusts and Trustees § 48, p. 385 (2d ed. 1965). But here, while the brother is personal representative as well as sole devisee and legatee, the precatory words are addressed to him as "Brother" and not as fiduciary. *See Newhall* v. *McGill*, 69 Ariz. 259, 212 P. 2d 764, 768 (1949); *cf. In re Liginger's Estate*, 14 Wis. 2d 577, 111 N. W. 2d 407 (1961). And in *Boutelle* v. *Boutelle*, 231 Md. 69, 188 A. 2d 559 (1963), an absolute devise and bequest to the testator's wife, also named as his executrix, followed by the words "to be held for the benefit of herself and our children", was held to be no trust but an outright gift.

Under the modern view, approved by us and by a majority of other courts, no trust is created by precatory language directed to a legatee unless there is testamentary intent to impose a legal obligation upon him to make a particular disposition of property. Scott, *supra*, § 25.2 p. 206; Bogert, *supra*, § 48, pp. 374-5; *Smith* v. *Baptist Orphanage, supra*, 194 Va. at 904-6, 75 S. E. 2d at 493-5; Annots., 49 A. L. R. 10, 70 A. L. R. 326, 107 A. L. R. 896. The rule is stated as follows in Restatement, Trusts (2d ed. 1959):

"§ 25. Precatory Words.
No trust is created unless the settlor manifests an intention to impose enforceable duties.
Comment:
a. The test. The rule stated in this Section is applicable although the settlor has called the transaction a trust; no trust is created unless he manifests an intention to impose duties which are enforceable in the courts."

In following the majority rule we have stated that more than mere precatory words are required to create a trust. *See McClure* v. *Carter, Ex'r.*, 202 Va. 191, 195, 116 S. E. 2d 260, 264 (1961). The

precatory language will not be made imperative if it comprises merely words of suggestion and advice. *See Carson v. Simmons*, 198 Va. 854, 96 S. E. 2d 800 (1957); *Smith* v. *Baptist Orphanage, supra*, and cases cited therein.

In *McKinsey* v. *Cullingsworth, supra*, 175 Va. at 412, 9 S. E. 2d at 316, we held that the words "Vennor I want you to have my home and every thing and you take care of Lula the best you can" did not create a trust but gave to Vennor (Vernon S. Cullingsworth) the entire property of the testatrix in fee simple and absolute estate.

It has been said that if a supposed trust would be invalid for any reason "the argument against a trust intent is apt to be conclusive". Bogert, *supra*, § 48, p. 391. Here, the argument for a trust intent is advanced by those who know that the trust, if established, would then be declared invalid and that the testatrix would be held to have died intestate except for the appointment of her personal representative.

The cases relied upon by the lower court, *Sims* v. *Sims*, 94 Va. 580, 27 S. E. 436 (1897) and *Lawless* v. *Lawless*, 187 Va. 511, 47 S. E. 2d 431 (1948), are distinguishable. In *Sims* the trust language was clear and unequivocal, the property being given to a nephew "to be disposed of by him as a private trust, about which I shall give him specific verbal directions. . . ." 94 Va. at 582, 27 S. E. at 436-37. The verbal directions were void and parol evidence was inadmissible to prove them. So the trust was void and the committee of the trust beneficiary was entitled to the property.

In *Lawless* the testator made various devises and bequests to designated beneficiaries. He also in three clauses left property to his brother "as I shall later request", "on a special purpose" and "for purposes herein written later on", respectively. By letter of even date with the will the testator requested his brother to purchase and send a rose each week to a girl whom he admired. We held that, as the letter was not incorporated by reference into the will, no valid trust was created and the testator's heirs at law were entitled to the money and other property in controversy.

We conclude that the language found in Mrs. Mallory's will falls short of establishing an intent to create a trust and that it constitutes a devise and bequest of her property in fee simple and absolute estate to her brother William L. Burton.

*Reversed and final decree.*