## Richmond

MEADE T. SPICER, JR., ETC. V. RUSSELL ALTON
WRIGHT, ADMINISTRATOR, ETC., ET AL.

January 20, 1975.

Record No. 740273.

Present, All the Justices.

*John W. Edmonds, III (John S. Barr; Mays, Valentine, Davenport & Moore,* on brief), for appellant.

*Archer L. Yeatts, III (Maloney, Yeatts & Balfour,* on brief), for appellees.

Poff, J., delivered the opinion of the court.

Leila Wilson Spicer died March 22, 1968, survived by her husband, Meade T. Spicer, Jr., her sole heir at law. In her holographic will dated May 20, 1966, admitted to probate, she named her sister, Anne Beecher Wilson as "executor" without bond. Miss Wilson died on June 8, 1970. Russell Alton Wright qualified as Mrs. Spicer's administrator d.b.n.c.t.a. and as such filed a bill seeking aid and guidance in the construction of the will. He named as defendants Meade T. Spicer, Jr.; Archer L. Yeatts, III, Administrator of the Estate of Anne Beecher Wilson, deceased; the heirs at law and distributees of Miss Wilson; and certain parties unknown. John W. Edmonds, III, was appointed Guardian *ad litem* for Meade T. Spicer, Jr.

The third paragraph of the will provided:

"My estate of every kind and description, personal, real estate, etc., I give to my sister, Anne Beecher Wilson to be disposed of as already agreed between us."

By final decree entered February 7, 1974, incorporating a letter opinion dated December 19, 1973, the chancellor held "that Anne Beecher Wilson acquired a fee simple title to the estate of Leila Wilson Spicer . . . free of and from all trusts". We granted Meade T. Spicer, Jr., by his Guardian *ad litem*, an appeal. By order entered in this Court on November 26, 1974, it appearing that Meade T. Spicer, Jr., died on October 18, 1974, Katharine S. Edmonds, Executrix of the Estate of Meade T. Spicer, Jr., deceased, was substituted as party appellant.

The case was heard upon a stipulation of facts. Mr. and Mrs. Spicer were married in June, 1953, when both were over 50 years of age. Prior thereto, Mrs. Spicer and her sister, Miss Wilson, had lived together in an apartment, caring for an aunt who was suffering a terminal illness. After the aunt's death, Miss Wilson joined the Spicers in their apartment. She lived there in two separate rooms and took her meals with her sister and brother-in-law. For three days in April, 1966, approximately one month before the will was written, Mr. Spicer was hospitalized for a cardiovascular condition, generalized arteriosclerosis, and mild diabetes. Hospital records show that he sat staring into space or walked about aimlessly in a state of confusion. Shortly thereafter, Mr. Spicer executed a power of attorney authorizing his wife to conduct his affairs. The Spicers' joint federal income tax return, prepared from data assembled by Mrs. Spicer, reflects an adjusted gross income of less than $1200.00 in 1966.

A doctor at Tucker Hospital, where Miss Wilson was employed for 50 years, remembered granting Miss Wilson's request for free time to accompany her sister to make a will relating to "property of Miss Wilson's, Mrs. Spicer, and Mr. Spicer." Nothing in the record shows that Mrs. Spicer executed a formal will or that she intended, by executing her holographic will, to change an earlier will.

Pearl Latta, the sisters' maid for more than 40 years, could not remember any discussion between her employers concerning the agreement mentioned in the will, but she did recall hearing them say that they did not want any distant relatives to have

their property. When Mrs. Spicer died, Miss Wilson directed that no relatives should be notified of the death or funeral.

Appellant contends that the language of the will, "to be disposed of as already agreed between us", is imperative and connotes an intent to create an express trust; that such testamentary intent is corroborated by the extrinsic evidence; and that since the terms of the agreement are unknown and the express trust cannot be enforced, "[t]he property must be held as a resulting trust for Mrs. Spicer's heir and next of kin — her husband."

In *Burton* v. *Irwin*, 212 Va. 104, 181 S.E.2d 624 (1971), the testatrix devised her estate by holographic will to her brother whom she named "executor and trustee". The last sentence of the will provided: "My Brother knows my wishes and will carry them out, to the best of his ability." The chancellor held that an express trust was intended, that the trust failed for indefiniteness, and that a "naked trust was created or implied in favor of the heirs at law and distributees" of the testatrix. We said that "[t]he question is whether the testatrix intended to create a trust for undesignated beneficiaries and unspecified purposes which must fail for indefiniteness or whether she intended to leave her entire estate in fee simple to her brother. If she created a void trust then her net estate will be held by Burton as trustee under a resulting trust for the benefit of her heirs at law and distributees." 212 Va. at 105-6, 181 S.E.2d at 626. Reversing the chancellor's decree, we held that "the language found in Mrs. Mallory's will falls short of establishing an intent to create a trust and that it constitutes a devise and bequest of her property in fee simple and absolute estate to her brother William L. Burton." 212 Va. at 110, 181 S.E.2d at 629.

Here, we are faced with essentially the same question. We must decide whether the language of Mrs. Spicer's will, read in context with the extrinsic evidence, is sufficient to establish an intent to create an express trust; if so, that trust fails for indefiniteness and a resulting trust arises in favor of Meade T. Spicer, now deceased; if not, Miss Wilson takes the entire estate in fee simple.

As we said in *Burton*, "[p]recatory words are *prima facie* construed to create a trust when they are directed to an executor . . . [but] no trust is created by precatory language directed to a legatee unless there is testamentary intent to impose a legal

obligation upon him to make a particular disposition of property." 212 Va. at 109, 181 S.E.2d at 628.

> ". . . [T]he question in all cases is whether a trust was or was not intended to be created; *i.e.*, looking at the entire context of the will and the facts and circumstances properly admitted into evidence, did the testator intend to impose a binding obligation on the devisee to carry out his wishes, or did he mean to leave it to the devisee to act or not at his own discretion. [Citations omitted]." *Smith* v. *Baptist Orphanage*, 194 Va. 901, 905, 75 S.E.2d 491, 494 (1953).

The extrinsic evidence showing the close relationship between Mrs. Spicer and Miss Wilson reinforces the import of the language of the will that, at the time the will was written, the two sisters had "already agreed" how the property of the testatrix was "to be disposed of". But such evidence fails to establish a "testamentary intent to impose a legal obligation . . . to make a particular disposition of property" or to show that the agreement was one designed "to impose duties which are enforceable in the courts." *Restatement of Trusts* § 25, Comment a at 69 (2d ed. 1959). If the extrinsic evidence had sufficiently identified the beneficiary agreed upon and the terms of the benefits agreed upon, that evidence and the precatory language considered together would be sufficient to establish a testamentary intent to impose a legally enforceable duty, and to create a trust.[1] Since the evidence did not, the precatory language standing alone imposes nothing more than an undefined moral obligation.

As to the nature of that obligation, the evidence suggests several possible interpretations. Mr. Spicer was infirm and impecunious, and it is reasonable to surmise that the sisters agreed that upon Mrs. Spicer's death, Miss Wilson would receive her property and use part or all of the corpus or income for Mr. Spicer's maintenance and support.[2] It is possible that they

---

[1] *See, e.g., Lawless* v. *Lawless*, 187 Va. 511, 47 S.E.2d 431 (1948), where a letter identifying the intended beneficiary and the terms of the benefits, although incompetent to be incorporated by reference in the will so as to create an express testamentary trust, was sufficient when read in context with precatory language in the will to show an intent to create a trust.

[2] The record does not show whether Mrs. Spicer was aware when she wrote her will that Code § 64-16 provided that when a decedent left no surviving descendants and left a will making no provision for a surviving spouse, the will was automatically renounced

agreed that Miss Wilson would make some provision out of what she received for Pearl Latta who had served them for more than 40 years. It is possible, too, that the only plan agreed upon was that Miss Wilson would take Mrs. Spicer's entire property and manage and dispose of it so that it would never pass to their distant relatives, or, upon Mr. Spicer's death, to his heirs or distributees. With no evidence of oral declarations of intent to create a particular trust for a particular beneficiary, nothing in the record aids us in choosing among these several interpretations. All that the extrinsic evidence fairly supports is an interpretation that the agreement mentioned in the will was a sisterly "understanding" that upon Mrs. Spicer's death, Miss Wilson would receive her entire estate and that in the use and disposition of it, Miss Wilson would exercise her own discretion as to how their understanding should best be implemented. Such an "understanding" imposes no legal obligation and engrafts no trust upon a testamentary grant. *See Carson* v. *Simmons*, 198 Va. 854, 96 S.E.2d 800 (1957).

We hold that the language Mrs. Spicer employed is precatory, that the extrinsic evidence is insufficient to render that language imperative or to establish a testamentary intent to impose a legal obligation to make a particular disposition of property, that no express trust was intended or created, and that the language constitutes an absolute testamentary grant to Miss Wilson. Our holding in no way impairs those rights which the parties have agreed vested in the surviving spouse under Code § 64-16 on the date of Mrs. Spicer's death.

Finding no error below, we affirm the chancellor's decree.

*Affirmed.*

and one-half of the surplus personal estate vested in the surviving spouse. This statute, still applicable at the time of Mrs. Spicer's death, was part of Title 64 which was repealed effective October 1, 1968.