## Richmond

### GARNET H. BAILEY ET AL. V. ETTA BAILEY FORD ET AL.

April 21, 1978.

Record No. 770109.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, J.J.

*J. Wayne Sprinkle* for appellants.

*J. Stanley Livesay, Jr. (Schlitz, Levy and Livesay, Ltd.*, on brief) for appellees.

COMPTON, J., delivered the opinion of the Court.

In this appeal from a decree in a declaratory judgment proceeding at equity, we review the chancellor's interpretation of the holographic will of the late Lillian Estelle Whitley Bailey. The controversy, precipitated by the deaths of Irvin Lee Bailey, a son of the testatrix, and his second wife, Carol, in a common disaster, concerns a parcel of land in the City of Chesapeake.

The contest is between the two children of Irvin by his first wife, plaintiffs below, and some of the heirs at law of the testatrix, defendants below. Upon consideration of the will, evidence heard *ore tenus*, and memoranda of counsel, the chancellor, without assigning any reasons for his ruling, found in favor of the plaintiffs. From the September 1976 final decree, we granted this appeal, based on a petition filed by some of those who were defendants in the trial court.

The following chart, listing the eight children of the testatrix, and her grandchildren who are involved in this litigation, may be of assistance as we relate the facts. The names of those who were parties to the proceeding in the trial court are italicized.

Lillian E. Bailey
(Died 1961)

Garnet    Audrey    Ray    Effie    Reuben    Irvin L.    Rollis    Elsie
(Died 1973)                    (Died 1976)
(Blanch,    his widow)

Gilbert    Mary    Etta    Irvin A.

The will in issue was written against the following factual background. In 1942 or 1943, Irvin Lee Bailey, living in the Tidewater area with his first wife and their two children (plaintiffs Etta and Irvin A.), left Virginia in the company of Carol, whom he was later to marry, and went to Florida. Irvin, an alcoholic then age 42, met Carol, another alcoholic who was about five years younger, while he was "hanging around bars and so forth in Portsmouth." After staying in Florida for some time, the couple returned to Virginia accompanied by Gene Conner, one of Carol's sons by a previous marriage, who was also an alcoholic. The trio was allowed by the testatrix to live in a house on property which she owned and which is the subject of this dispute.

Irvin claimed he had obtained an out-of-state divorce from his first wife and then married Carol in Florida. But because "he could not produce any papers" or otherwise prove to the testatrix that he had, in fact, been divorced, she forced Irvin to obtain a Virginia divorce in 1949 and then "remarry" Carol so that they could "live legally" on her property.

As the years passed, Irvin "did not work regularly" and Conner "was constantly in trouble" with the police. Irvin was "cut ... up several times" by Conner and was shot on one occasion by Carol. The testatrix, who tended flowers which she sold at the city market, would "buy groceries [for her son], take them by his home, and before she could get back to her house he'd be on his bicycle, taking them to swap for wine."

The parcel in question was originally contained in a tract of approximately 90 acres of land owned by the testatrix abutting Dock Creek. She divided the tract and conveyed a fee simple interest in separate lots to each of her seven children, excepting Irvin. In 1951, by deed of gift, she conveyed a life estate in an eighth parcel to him, retaining a reversion in the lot. In 1955, she joined with him in a deed selling a portion of that eighth parcel in order to obtain funds for Irvin's support.

Later in 1955, the three-page will in question was drawn. The document is set out below complete with errors in spelling, punctuation and syntax. We have italicized the portions which are the focus of this dispute.

"Sept. 6th. 1955

"This is to certify, that I, being in my right mind do hereby write this document to be used at my death as to how I would like my worldly affairs or whatever I leave in property or money divided. I hereby appoint my daughter Elsie E. McCaskill or in case of her death before I die-my son-Garnet H. Bailey to be my sole admistratrix or administrator to serve without bond in the division of whatever I leave of earthly goods or property — *I gave my son Irvin L. Bailey a tract of land* bounded on on side by dock creek, on one side by dock landing road or road 663-on one side by woodland drive or road 708 and on the other side by a parcel of land that I agreed for him to sell. *the parcel of land mentioned was given to him for a life right and is to come back to my estate at his death unless his present wife should have died before his death. in case of a separation by divorce or death he is to be given a clear deed on the part he holds as a life right otherwise if he is living with his present wife Carol L. Bailey at his death-then the life right is to be sold and divided with each of my living heirs or their heirs, after giving Etta Mae Wright and Irvin Alfred Bailey, son and daughter of said Irvin L. Bailey. 100-dols each as their part of their Fathers estate.*

"All my money and the money left me by their Father Henry L. Bailey, I have in bonds for each one of my heirs and they are located in the Citizens Trust Bank on High St Portsmouth Va. in a safety deposit box-along with a copy of this will.

"I have in the same bank a small checking account-also I have life insurance for about 8 hundred dols, and an accident policy which in case I was killed would pay something.

"I have social security which at my death would pay part of my burial.

"I want just a very modest burial and the remaining part of insurance added to whatever I have and equally divided between all ,my heirs-I also own one lot on the west side of Charle Overtons home-which if not sold before my death that I wish my admistratrix to sell and divide equally with my heirs.

"I am going to carry this will in my pocket book, but I am leaving a carbon copy of the same in my deposit box.

"All debts owed me by any of my heirs is to be canceled as paid in full at my death-I am not having a witness as I know that they will all know my handwriting. All paid up life insurance policies on any of Effie Normans family are to be given to her. Rollis to him Garnets to him, but the paid up policy on Irvin is to be held by Elsie or Garnet and used at Irvins death to bury him.

"The bonds in Irvins name are not as much as the other children but I had to use some of them when he was in ,tough luck, he will understand.

"Love-

"Signed
"Lillian Estelle Whitley Bailey
"Sept. 6th. 1955"

Subsequent to the execution of the will, the testatrix joined with Irvin to convey a second portion of the tract on which he lived to obtain more funds for him. After that conveyance, approximately two-thirds of an acre appurtenant to the home remained from the original tract in which he had a life interest. Before her death in 1961, the testatrix sold at least five other parcels of her land and gave Irvin the proceeds.

On February 6, 1976 about 3:00 a.m., Irvin and Carol, still married and living together, both died during a fire which destroyed the home. There was no sufficient evidence to

determine which person died first or that they died otherwise than simultaneously. He left no will.

Thereafter, this dispute over the interest in the two-thirds-acre parcel arose. By separate deeds, four of the children of the testatrix, Effie, Reuben, Rollis and Elsie, quitclaimed to the plaintiffs whatever interest they had, if any, in the property in question. Subsequently, the plaintiffs filed this proceeding to "have confirmed in them the fee simple title in and to the subject property by virtue of the said will of Lillian E. Bailey and the intestate death of Irvin L. Bailey." This request was granted by the trial court in the final decree. From this judgment adverse to the defendants, only Garnet, Audrey and Blanch have appealed.

The plaintiffs contend that upon the death of the testatrix in 1961, Irvin acquired "something" under his mother's will in addition to the life estate created by the 1951 deed. They say that this "something" was either a defeasible, qualified or conditional fee or an estate in expectancy. Thus, the argument continues, when Irvin and Carol died in 1976, the provisions of Code § 64.1-97 were activated, enabling a fee simple interest in the property to devolve as a part of Irvin's estate to his heirs at law.

That statute, a part of Virginia's Uniform Simultaneous Death Act (hereinafter the Act) provides:

> "When the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this chapter."

The argument is that Irvin "certainly had 'property' or an interest therein created by his mother's will beyond that which he had under the 1951 deed, which property this Code Section disposed of 'as if he had survived' Carol, because of Code, Section 64.1-97 and the facts of the case." They say further that it "does not matter how long Irvin survived Carol under [§ 64.1-97] or the will, the legal fact is that he did survive her, and thus satisfied the conditions of his mother's will to receive a 'clear deed'."

Additionally, plaintiffs urge that the "forfeiture provision" was a "clear inducement" for Irvin to divorce his wife Carol, and thus against public policy. They point out that from the probate

of the will in 1961 until Irvin's death in 1976, he knew of the will provision. Irvin could have, they say, divorced Carol, obtained a "clear deed", sold the property and disposed of the proceeds however he pleased, and thereafter done "whatever he pleased" with Carol, including marrying her again. Thus, the plaintiffs contend, these conditions placed on Irvin's obtaining full ownership of the fee simple title were null and void, and the title vested as if the conditions did not exist.

We do not agree with either of the plaintiffs' contentions, and reverse.

■ Having examined the will in the light of appropriate extrinsic evidence, we are of opinion that no interest was created in the subject property which survived Irvin's death so as to descend to his heirs. Instead, we think that the only vested interest Irvin ever had was a life estate which terminated at his death. Believing the testatrix's precondition of "*separation* by divorce or death" to control, we conclude that the Act has no bearing upon the devolution of title to the land in question.

Careful scrutiny of this holograph reveals that the testatrix intended passage of her reversion to turn primarily upon the future marital status of her son Irvin. The will unambiguously states on its face, adding appropriate emphasis:

> "*in case of a separation by divorce or death* [Irvin] is to be given a clear deed on the part he holds as a life right *otherwise if he is living with his present wife Carol L. Bailey at his death*-then the life right is to be sold and divided [among each of the testatrix's heirs, subject to a charge of $100 in favor of each of Irvin's two named children]."

Of the four eventualities which might have occurred before the termination of Irvin's life estate (Irvin married and living with Carol; married but separated from Carol; divorced from Carol; predeceased by Carol), the testatrix made express provision for three, only one of which (Irvin predeceased by Carol) relates to priority of death. However, because there is no clear expression of testamentary intent in the event of the couple's simultaneous death, we search further to determine such intent in order to apply, after a common disaster, the vital terms "separation" and "living with".

Where there is a legitimate dispute as to the meaning of words used in the will, evidence showing the facts and circumstances

surrounding the testatrix at the time the will was executed may be considered upon the question of testamentary intent. *Burton v. Irwin*, 212 Va. 104, 106, 181 S.E.2d 624, 626 (1971). The evidence in this case, outlined above, shows that the prime concern of the testatrix was to provide a place of residence for her inebriate son during his lifetime. She also wanted to protect Irvin's life, and his interest in the property, from the acts of Carol and her son. It was to be a place which could not be lost to claims of creditors, or sold and the proceeds dissipated. Under no circumstances was Carol to have an interest in the property.

In view of her salient concerns, we conclude that the testatrix could not have intended the fee simple title to become vested in Irvin and his heirs under these circumstances, even assuming that he momentarily survived his wife's death. Therefore, Code § 64.1-97, dealing with priority of death, can have no application in this case. Within the intendment of this will, there was no "separation" of Irvin and his wife by death; to the contrary, Irvin was "living with" Carol at the time of his death and the reversion should therefore pass to the testatrix's other heirs.

■ The plaintiffs' public-policy argument likewise is without merit. The so-called "forfeiture provision" was not designed to encourage a divorce between Irvin and Carol, as the plaintiffs contend. Indeed, the testatrix paid the expenses of Irvin's divorce from his first wife so he could marry Carol. And after their marriage, she provided them with funds which were used for the joint support of Irvin and Carol.

For the foregoing reasons, we hold that the trial court erred in concluding, in effect, that Irvin had become vested with fee simple title in the subject property which passed by descent to his children. Consequently, the decree appealed from will be reversed and the cause remanded for such further proceedings as may be necessary, not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*